TEXAS & P. RY. CO. et al. v. NEW ROADS OIL MILL & MFG. CO., Limited.

(Circuit Court of Appeals, Fifth Circuit.   March 22, 1915.   Rehearing Denied
April 20, 1915.)

No. 2673.

CARRIERS ⬤⟳193—RATES—TARIFFS.

In computing the rate for a shipment over connecting carriers, a tariff
of the initial carrier, naming specific rates from designated points to
other designated points, which did not include a junction point, does not
apply, but the rate is to be based on the local tariffs of the initial car-
rier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 348, 868, 869;
Dec. Dig. ⬤⟳193.]

In Error to the District Court of the United States for the Eastern
District of Louisiana; Rufus E. Foster, Judge.

Action by the New Roads Oil Mill & Manufacturing Company, Lim-
ited, against the Texas & Pacific Railway Company and another, to
recover overcharges of freight.   Judgment for plaintiff, and defendants
bring error.   Reversed and remanded, with instructions.

This suit was brought by the defendant in error to recover of the plaintiffs
in error certain alleged overcharges of freight on cotton seed shipped from
various stations on the lines of the St. Louis, Iron Mountain & Southern Rail-
way Company and its branch, known as the New Orleans & Northwestern
Railroad, to Ferriday, the junction point with the Texas & Pacific, and thence
over the latter to New Roads, all stations in Louisiana.

The following stipulation of counsel discloses the question arising and to
be decided on this writ of error:

"(2) Plaintiff contends that, in order to calculate the proper freight rates
chargeable on the shipments involved in this case, tariff L. C. No. 95 of the
Texas & Pacific Railway Company should be applied in conjunction with
tariff No. 699–A of the New Orleans & Northwestern Railway Company, on
all of said shipments made prior to October 11, 1910, and that on shipments in-
volved in this case made on and after October 11, 1910, the proper freight
rates chargeable should be arrived at by applying said tariff L. C. No. 95 of the
Texas & Pacific Railway Company, in conjunction with tariff No. 1264–A of
the St. Louis Iron Mountain & Southern Railway Company.

"Defendants deny that either of the said tariffs No. 699–A or 1264–A are
applicable to the shipments involved in this case, but admit, if these tariffs
are applicable, as plaintiff contends, that plaintiff has been overcharged in
freight rates on said shipments to the amount of $5,002.57, with interest and
costs, as claimed in its petition.

"Defendants contend that the tariffs applicable to the shipments involved
in this case are as follows:

"(1) On all shipments made prior to November 19, 1910 (except shipments of
date November 11, 1910, from Mansford, account Tallulah), tariff L. C. No.
95 of the Texas & Pacific Railway Company, in conjunction with tariff No.
4–A of the New Orleans & Northwestern.

"(2) On shipments of date November 11, 1910, from Mansford, account Tal-
lulah, tariff L. C. No. 95, Texas & Pacific Railway Company, in conjunction
with tariff No. 5504 of the St. Louis, Iron Mountain & Southern Railway Com-
pany.

"(3) On all shipments made on and after November 19, 1910, tariff L. C.
No. 95 of the Texas & Pacific Railway Company, in conjunction with tariff
No. 2496 of the St. Louis, Iron Mountain & Southern Railway Company.

"Plaintiff denies that these tariffs No. 4–A and 5504 and No. 2496 are ap-
plicable to the shipments involved in this case, but admit, if they are applica-
ble, as defendants contend, that plaintiff has been overcharged only $761.32.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Plaintiff admits that a tender of $761.32, with interest and costs added to date, has been made to it in this case by defendants, and refused."

It is well to note that tariff 1264–A is substantially a reissue of tariff No. 699–A, and superseded the latter as to shipments made after October 11, 1910. Tariff 1264–A, however, did not apply to the Texas & Pacific Railway at the time the shipments in controversy moved. The three tariffs, 4–A, 5504, and 2496, were regular local tariffs prescribing local rates on various commodities, and were governed by Western Classification.

During the time that the shipments moved, the following tariffs were published by the carriers, approved or authorized by the Railroad Commission of Louisiana, without exceptions, save such as are noted on the tariffs, to wit:

(a) Tariff L. C. No. 95 of the Texas & Pacific Railway Company.

(b) Tariff No. 699–A of the New Orleans & Northwestern Railway Company, and other railroad companies, in effect up to October 10, 1910.

(c) Tariff No. 1264–A of the St. Louis, Iron Mountain & Southern Railway Company, effective on and after October 10, 1910.

(d) Tariff No. 4–A of the New Orleans & Northwestern Railroad, effective up to November 19, 1910.

(e) Tariff No. 5504 of the St. Louis, Iron Mountain & Southern Railway Company, in effect on November 11, 1910.

(f) Tariff No. 2496 of the St. Louis, Iron Mountain & Southern Railway Company effective on and after November 19, 1910.

A jury was waived and the cause submitted to the court. Adopting the contention of counsel for the defendant in error, the court rendered judgment accordingly, to which the plaintiffs in error excepted, and to review the judgment they have prosecuted this writ of error.

Walker B. Spencer, Charles Payne Fenner, Philip S. Gidiere, and Esmond Phelps, all of New Orleans, La., and Henry Bernstein, of Monroe, La., for plaintiffs in error.

E. Howard McCaleb, of New Orleans, La., and Wm. C. Carruth, of New Roads, La., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

PER CURIAM. If tariff 699–A be not applicable to shipments made by the defendant in error, prior to October 11, 1910, over the St. Louis, Iron Mountain & Southern Railway and its branch, the New Orleans & Northwestern Railroad, to Ferriday, and thence, over the Texas & Pacific Railway, to New Roads, then the contention of the defendant in error cannot be sustained. There is no controversy as to the rate over the Texas & Pacific from Ferriday to New Roads; the only insistence of the defendant in error being that the rate prescribed by tariff 699–A over the St. Louis, Iron Mountain & Southern and its branch to Ferriday should have been applied to its shipments, rather than the local rate of tariff 4–A.

Tariff 699–A and its successor, 1264–A, are tariffs naming specific rates from certain designated points to particular stations; and Ferriday was not one of the stations therein named. These two tariffs did not, therefore, apply to Ferriday, and were inapplicable to the shipments involved in this case. The local tariffs, 4–A, 5504, and 2496, were plainly applicable, and as the plaintiffs in error applied the local rate thus prescribed, in connection with the Texas & Pacific rate, less 10 per cent., in obedience to the rules of the Railroad Commission of Louisiana, they were clearly within their rights, and judgment should have gone in their favor.

This precise question has been considered by the Louisiana Railroad Commission, in a penalizing proceeding between the parties now before this court, and the Commission after careful investigation and upon elaborate arguments, held as follows:

"The correct rates to apply on shipments of cotton seed moving from points on the New Orleans & Northwestern Railroad to New Roads prior to the issuance of the St. Louis, Iron Mountain & Southern Railway Company's tariff No. 1264–A, and during the time in which the shipments upon which overcharges are claimed moved, was the New Orleans & Northwestern Railroad Company's local distance tariff No. 4–A. We cannot agree with the contention of the plaintiffs that New Orleans & Northwestern Railroad Company's freight tariff No. 699–A should have applied on these shipments, since it was a tariff naming specific rates from certain specific points to particular stations named in the tariff."

It would seem that the Commission was considering the particular shipments in question here. Its ruling was, we think, entirely correct.

The judgment should be reversed, and the cause remanded to the trial court, with instructions to render judgment in accordance with the foregoing views and pursuant to the stipulation of counsel.

So ordered.